UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILARIO SUAREZ AGUILAR,<br><br>                    Petitioner,<br><br>        v.<br><br>JOHN DOE, Warden, California City<br>Corrections Center, et al.,<br><br>                    Respondents. | Case No.  1:25-cv-01742-KES-HBK (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO<br>GRANT PETITION FOR WRIT OF HABEAS<br>CORPUS [1]<br><br>(Doc. 1)<br><br>FIVE-DAY OBJECTION PERIOD |

Petitioner Hilario Suarez Aguilar, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the California City Detention Center in California City, California, initiated this action by filing a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed on December 4, 2025.  (Doc. 1, "Petition").  The Petition raises the following claims for relief: (1) Petitioner's detention in ICE custody without a bond hearing violates his Fifth Amendment procedural due process rights, (2) detention of Petitioner, as a noncitizen who previously entered the country and has resided here prior to being apprehended and placed in removal proceedings under 8 U.S.C. § 1225(b)(2), instead of § 1226(a), is a

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

violation of the Immigration and Naturalization Act ("INA"), and (3) Petitioner's detention is in violation of the Administrative Procedure Act. (*Id*. at 10-11). As relief, *inter alia*, Petitioner asks the Court to issue a writ of habeas corpus requiring that Respondents immediately release him, or in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) with seven (7) days. (*Id*. at 11).

In response, Respondent perfunctorily argues that the Court should deny the Petition because Petitioner is an "applicant for admission" subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2) and is therefore ineligible for a bond hearing.[2] (Doc. 7 at 2). Petitioner filed a reply arguing "an overwhelming majority of courts are finding that the circumstances of these detentions are unlawful and instead these petitioners should be allowed a substantive bond hearing under Section 1226." (Doc. 8 (also noting the government made no argument that Petitioner was subject to detention under § 1226)).

Significant to the consideration of the Petition is Petitioner's status as a Mexican citizen who entered the country without inspection and resided in the United States for more than 20 years before being apprehended and placed in standard removal proceedings under § 1229a. The undersigned recommends the district court grant the Petition as to Claim Two (violation of the INA) in part for the reasons set forth below.[3]

## I.    BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States without inspection on or around October 2001. (Doc. 7-1 at 2-4). He has resided in the United States for over 20 years. (Doc. 1 at 9, ¶ 38; *see also* Doc. 7-1 at 1 (noting voluntary return to Mexico in 1995)). He was convicted of misdemeanor DUI in 2001 and 2008; and documents submitted by Respondent indicate he was arrested for DUI and cruelty to a child in 2001, but no charges were

---

[2] Respondent also "acknowledges," without making any specific argument as to their relevance, district court cases within the Ninth Circuit that have recently vacated or stayed the Department of Homeland Security's July 8, 2025 *Interim Guidance Regarding Detention Authority for Applications for Admission*. (Doc. 7 at 2-3 (citing *Maldonado Bautista v. Noem*, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025); *Garro Pinchi v. Noem*, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025).

[3] In light of the Court's conclusion that Petitioner's detention is in violation of the INA and recommendation that Petitioner be immediately released, the Court declines to address Petitioner's additional procedural due process and statutory claims for relief.

filed.  (*Id*.; Doc. 7-1 at 2-3).

On June 17, 2025, Petitioner was arrested by ICE at a scheduled interview related to his I-485 Adjustment of Status application.  (Doc. 1 at 9, Doc. 7-1 at 2).  On the same date, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice to Appear charging Petitioner as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection).  (Doc. 7-1 at 4-6).  Petitioner asserts that he requested a bond hearing, and on July 16, 2025, the Immigration Judge ("IJ") denied his request and issued a decision that the court lacked jurisdiction to hold a bond hearing because Petitioner was an applicant for admission and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  (Doc. 1 at ¶¶ 5, 42).

Petitioner is currently detained in ICE custody at the California City Detention Facility in California City, California.  (*Id*., ¶ 1).

## II.   APPLICABLE LAW AND ANALYSIS

### A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  As pertinent here, "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order."  *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

### B.  Claim Two: Violation of the INA

Petitioner alleges that Respondents' interpretation of 8 U.S.C. § 1225(b)(2) as requiring mandatory detention of noncitizens, like him, who previously entered the country without inspection and have been residing in the United States for many years prior to being apprehended and placed in removal proceedings on the grounds of inadmissibility, is unlawful and a violation of the Immigration and Nationality Act ("INA").  (Doc. 1 at 10-11).  Rather, Petitioner claims the applicable provision for noncitizens who have been present and residing in the United States prior to being apprehended, as here, is 8 U.S.C. § 1226(a), opposed to 8 U.S.C. § 1225(b)(2).  Thus, the Court will briefly outline the statutory and legal framework of detention authority under the INA.

3

Title 8 U.S.C. § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," states that an "alien present in the United States who has not been admitted or arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)). Pursuant to § 1225(b)(1), if an immigration officer determines that an arriving alien is inadmissible, and the alien does not indicate an intention to apply for asylum or a fear of persecution, "the officer [must] order the alien removed from the United States without further hearing or review." § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7). As relevant here, pursuant to § 1225(b)(2)(A), subject to certain exceptions, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under 1229a of this title." § 1225(b)(2)(A) (emphasis added). "Applicants for admission" may be temporarily released on parole only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). As explained by the Supreme Court in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297.

Title 8 U.S.C. § 1226, titled "Apprehension and detention of aliens," instructs that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Pursuant to § 1226(a) the government has broad discretion whether to continue to detain the arrested alien or release the alien on (A) bond of at least $1,500 … or (B) conditional parole. § 1226(a); *Rodriguez Diaz v.*

4

*Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)) (noting an ICE officer makes the initial custody determination when a person is apprehended under § 1226(a) and may release the alien if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Section 1226 also provides that "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final," and may request an additional bond hearing if he or she can demonstrate a material change in circumstances. *Id*. at 1197 (citing 8 C.F.R. § 236.1(d)(1), 1003.19(e)).

However, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original). In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes. LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

"Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Until the government adopted its new interpretation of § 1225(b)(2) this year, the longstanding (almost three decades) practice of the agencies charged with interpreting and enforcing the INA without inspection and were apprehended while present in the U.S. By contrast, those apprehended at or near a port of entry were designated as 'arriving aliens.'); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1244 (W.D. Wash. 2025) ("The longstanding practice of the Executive branch agencies charged with interpreting and enforcing the INA considered noncitizens like [petitioner] who had entered without inspection, and were apprehended while

residing in the United States, as subject to Section 1226(a)."). However, in July 2025, the Department of Homeland Security ("DHS"), in conjunction with the Department of Justice ("DOJ") adopted the legal position that § 1225, instead of § 1226, is the applicable immigration authority for an "applicant for admission" including an alien present in the United States "who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival," and all applicants for admission are subject to mandatory detention under § 1225(b). The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026). As noted above, in September 2025, the BIA issued a precedential decision adopting this interpretation of the government's detention authority under the INA and holding that IJ's do not have authority to hear bond requests or grant bond to aliens "who are present in the United States without admission," because they are applicants for admission and subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

Here, in keeping with these policy changes, Respondents contend that as an alien present in the United States who has not been admitted, Petitioner is considered an "an applicant for admission" and is therefore subject to the mandatory detention under § 1225(b)(2) and ineligible for a bond hearing. (Doc. 7 at 2); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States … shall be deemed for the purposes of this chapter as an applicant for admission."). Petitioner alleges § 1225(b)(2) does not apply to noncitizens, like Petitioner, who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. "Such noncitizens may only be detained pursuant to § 1226(a), unless they are subject to § 1226(c), or § 1231." (Doc. 1 at 10). The Court agrees with Petitioner for the reasons

discussed briefly below, as they have been exhaustively considered by district courts across the country.

Initially, this Court's analysis is guided by principles of statutory interpretation. The plain language of the statute is the starting point for its interpretation. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989). Fundamentally, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. United States Steel Corp.*, 571 U.S. 200, 227 (2014) (citation omitted). But often "the 'meaning – or ambiguity – of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2105). Moreover, it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also Corley v. United States*, 556 U.S. 303, 314 (2009). Relevant here, the Supreme Court recently stated that courts "must exercise independent judgment in determining the meaning of statutory provisions," and while the agency may provide guidance, the courts "may not defer to any agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 412 (2024).

Courts considering the plain language of this statute have almost universally found that the phrase "seeking admission" necessarily entails some type of action taken to obtain entry. *See, e.g., Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 489-90 (S.D.N.Y. 2025) (This understanding accords with the plain, ordinary meaning of the words 'seeking' and 'admission.' For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there."); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. Aug. 29, 2025) ("Respondents completely ignore

the term 'seeking' when attempting to broaden what 'seeking admission' means.  This implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."); *Lepe v. Andrews*, 2025 WL 2716910, at *5 (E.D. Cal. Sept. 23, 2025).  The Court is persuaded by this analysis.  Petitioner has resided in the United States for 20 years prior to his arrest and detention without seeking admission; thus, the mandatory detention provision of § 1225(b)(2)(A) does not apply to Petitioner regardless of whether he is properly defined as an "applicant for admission."

As noted by Petitioner, Respondents' proposed interpretation also disregards the relationship within the INA between § 1225 and § 1226.  (Doc. 1 at 7-9).  First, § 1225 governs "inspection" of "arriving aliens," while § 1226 focuses on the "apprehension and detention of aliens."  The interplay between these provisions was summarized by the Supreme Court in *Jennings* as follows: "[t]o implement its immigration policy, the Government must be able to decide (1) who may enter the country and (2) who may stay here after entering. … In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 286-89, *see also id*. at 303 ("§ 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings."); *Romero v. Hyde*, 2025 WL 2403827, at *12-13 (D. Mass. Aug. 19, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (noting the distinction between "persons inside the United States and persons outside the United States" "is consistent with the long history of our immigration laws and with the Constitution.").  Thus, Petitioner is more aptly characterized as an alien "already in the country," albeit without legal status, and should therefore be detained under § 1226(a).

Second, as described above, the 2025 amendment to § 1226(c) under the Laken Riley Act, added subsection § 1226(c)(1)(E) to require mandatory detention for those inadmissible under §§ 1182(a)(6)(A) (aliens present in the United States without being admitted or paroled, like

8

Petitioner), (6)(C), or (7) *and* charged with, arrested for, convicted of, or admitting to certain crimes. § 1226(c)(1)(E).  If, as Respondents claim, all "applicants for admission," including those already present in the country and then deemed inadmissible, are already subject to mandatory detention under § 1225(b)(2), it would be unnecessary to pass an amendment requiring mandatory detention for those applicants who were also charged with certain crimes.  *See, e.g., Escobar Salgado*, 2025 WL 3205356, at *13.  "Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected."  *Gomes v. Hyde*, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *see also Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Based on the foregoing, giving effect to every word in § 1225(b)(2)(A) in accordance with their ordinary meaning, and considered in context with § 1226 and the overall statutory scheme, Respondents' new statutory interpretation of § 1225(b)(2), and the application of § 1225(b)(2)(A) to Petitioner, is in violation of the INA.  "Legislative history, congressional intent, and historical context is relevant to confirm textual analysis."  *See Escobar Salgado*, 2025 WL 3205356, at *11 (citing *Biden v. Texas*, 597 U.S. 785, 804 (2022)); *see also Loper Bright*, 603 U.S. at 386 (2024) ("The longstanding practice of the government – like any other interpretive aid – can inform [a court's] determination of what the law is.") (internal quotations omitted).  To the extent not discussed *supra*, in the interests of efficiency, the Court relies on the analysis of these factors by numerous district courts as further support that uninspected aliens residing long term in the United States without seeking admission, like Petitioner, are subject to detention under § 1226(a), and mandatory detention of those individuals under § 1225(b)(2) as recently interpreted by Respondent, is unlawful.  *See, e.g., id.* at *17-20; *Maldonado*, 795 F. Supp. 3d at 1150; *Salcedo Aceros*, 2025 WL 2637503, at *11-12; *Gomez v. Doe*, 2025 WL 3269886, at * (D. Ariz. Nov. 3, 2025) (collecting cases).

Finally, while not binding on this Court, it is noteworthy that district courts considering

9

this issue across the country, including in the Eastern District of California, have almost uniformly rejected Respondents' argument that all noncitizens who entered the United States without inspection and have lived in the United States for years or decades are "applicants for admission" subject to mandatory detention under § 1225(b)(2); instead, that category of noncitizen is subject to detention under § 1226(a). *Moreno Vergel v. Chestnut*, 2026 WL 32848, at *3 (E.D. Cal. Jan. 6, 2026) (collecting cases in the Eastern District of California); *Aquino v. LaRose*, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases); *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796, at *8, n.4 (E.D. Mich. Oct. 17, 2025) (collecting cases); *Echevarria v. Bondi*, 2025 WL 2821282, at *7 (D. Ariz. Oct. 3, 2025) (collecting cases); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States. Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.") (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025) (denying motion for temporary restraining order because petitioner failed to establish he was likely to succeed on the merits of his statutory claim, but also noting the finding "should not be understood an affirmative endorsement of the view that respondents' interpretation of § 1225(b)(2)(A) – which is in line with the expansive understanding of mandatory detention applicability – is correct."); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025) (§ 1225(b)(2)(A) applies to an alien who is physically present in the United Sates but not lawfully admitted, regardless of how long they have been physically present here."); *Alves de Andrade v. Patterson*, 2025 WL 3252707 (W.D. La. Nov. 21, 2025).

For all of these reasons, the Court concludes that Petitioner is not subject to mandatory detention under § 1225(b)(2)(A); rather, his detention is governed by the discretionary framework of § 1226(a).

Accordingly, it is hereby **RECOMMENDED:**

1.  The Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED**

2.  If the district court adopts these Findings and Recommendations, the district court direct that within seven (7) days of its Order, Respondents be directed to either (1) provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a), or (2) release Petitioner under reasonable conditions of supervision.

## NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.**  *Id.*; Local Rule 304(b) (permitting court to set a different time).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:   February 6, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

11